Henry Edward JAMES, Appellant,

v.

The STATE of Texas, Appellee.

No. 52416.

Court of Criminal Appeals of Texas.

Feb. 2, 1977.

M. Bruce Fort, Texas City, for appellant.

Ronald L. Wilson, Dist. Atty. and James F. Hury, Asst. Dist. Atty., Galveston, Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

BROWN, Commissioner.

This is an appeal from a conviction for aggravated rape. Trial was before a jury and punishment, enhanced by prior convictions, was set at life in the Texas Department of Corrections.

The sufficiency of the evidence is not challenged. Briefly stated, the record reflects the complaining witness' testimony that appellant abducted her from the parking area near her apartment, beat her with a flashlight, forced her to commit an act of oral sodomy on him, and then forced her at gunpoint to submit to vaginal and anal intercourse under threat of death.

In his first ground of error appellant contends that the trial court erred in refusing to grant a change of venue. It appears from the record of the venue hearing that appellant was charged with three other rapes and one attempted rape. He was convicted of the attempted rape in April, 1975, preceding this June trial for rape. Appellant introduced the affidavits of several Galveston newspaper reporters, radio newsmen, and attorneys who expressed their opinion that appellant could not receive a fair trial in Galveston County. Appellant also introduced more than thirty newspaper clippings. Most of these dealt with a series of rapes occurring over an extended period of time in the Galveston area, but only a dozen even mentioned appellant by name. Some of the clippings were in connection with appellant's trial for attempted rape. It was also developed that one of the radio newsmen had dubbed appellant the "East End Rapist," although it appears from the record and the clippings that the term was not widely used.

The State presented controverting affidavits and testimony of witnesses who ex-

pressed their opinion that appellant could receive a fair trial in Galveston County. Also in the record is the list of veniremen who were individually questioned about the issue of prior knowledge about appellant. Thirty-seven veniremen were examined and only four were excused because they had read or heard something about appellant. Four more veniremen stated that they "vaguely remember" or "might have read" something about appellant but that this would have no effect on their deliberations.

■ The applicant for a change of venue has a heavy burden of proving the existence of such prejudice in the community that the likelihood of obtaining a fair and impartial jury is doubtful. Absent such a showing, the trial judge is within the limits of his discretion in denying the change of venue. *Garcia v. State*, 537 S.W.2d 930 (Tex.Cr. App.1976); *Mitchell v. State*, 524 S.W.2d 510 (Tex.Cr.App.1975).

■ Having considered the evidence introduced at the pretrial hearing, examined the contents of the newspaper and radio coverage, and having read the voir dire of the jury panel and noticed the lack of difficulty in securing a qualified jury, we conclude that the trial court did not abuse its discretion in overruling appellant's motion for a change of venue. *Garcia v. State*, supra; *Adami v. State*, 524 S.W.2d 693 (Tex.Cr.App.1975).

Appellant's first ground of error is overruled.

In his second ground of error appellant contends that the trial court erred in overruling his motion to take the depositions of several witnesses for the State. Appellant's motion and accompanying affidavit assert that the witnesses were "material" and that they refused to talk with appellant's attorney or with an investigator working in appellant's behalf.

■ Under Article 39.02, Vernon's Ann. C.C.P., a defendant in a criminal case may take a deposition if he shows good reason at a hearing before the court and the court determines such reason exists. *McKinney v. State*, 505 S.W.2d 536 (Tex.Cr.App.1974);

*Martin v. State*, 422 S.W.2d 731 (Tex.Cr. App.1967).

■ In *McKinney v. State*, supra, it was said that:

"The trial court has wide discretion in either granting or denying a motion for taking a deposition, *Aguilar v. State*, 468 S.W.2d 75 (Tex.Cr.App.1971); *Beard v. State*, 481 S.W.2d 875 (Tex.Cr.App.1972), and the fact that witnesses of whom depositions are requested are adverse witnesses is not enough standing alone to show an abuse of discretion in denying the motion to take a deposition. *Tucker v. State*, 461 S.W.2d 630 (Tex.Cr.App. 1970), cert. denied, 403 U.S. 919, 91 S.Ct. 2230, 29 L.Ed.2d 696. (1971).

"For the appellate court to hold that the trial court abused its discretion in declining to permit depositions to be taken, there must be a showing that the defendant was injured by such action. *Beshears v. State*, 461 S.W.2d 122 (Tex.Cr.App. 1970)."

Appellant has not met this burden in the instant case. The trial court did not abuse its discretion in denying appellant's motion to take depositions.

Appellant's second ground of error is overruled.

In his third ground of error appellant contends that the trial court abused its discretion in refusing to take judicial notice of the time the moon rose and set on the night the prosecutrix was raped.

The prosecutrix testified that the rape occurred over a twenty to thirty minute period beginning at approximately 11:30 p.m. on December 17, 1974. It was developed that the prosecutrix was blind in one eye, but that she first got a look at her assailant by the light of a street light as they walked down an alley. She then stated that she was able to see his face from a very close distance when he was on top of her. It was established that she had picked appellant out of a lineup three weeks after the rape. The prosecutrix identified appellant in court as the man who raped her and stated that her identification was based on

her having seen him on the night she was raped.

On cross-examination she was asked about the lighting conditions in the alley where the rape took place, and she stated that there was sufficient light. She was asked whether the moon was full and she stated that it was. She later admitted that she could not recall what phase the moon was in at the time but that there was enough light to see that appellant was the man who raped her. Appellant then requested the court to take judicial knowledge of the rising and setting of the moon on the night in question. The court refused the request and for purposes of perfecting a bill of exception appellant later introduced a copy of the Texas Almanac which indicated that the moon was between the new moon phase and the first quarter phase and that on December 17 the moon rose at 10:00 a.m. and set at 9:23 p.m. Appellant contends that the court's refusal to take judicial notice of that fact deprived him of the opportunity to impeach the identification testimony of the prosecutrix.

In *Parish v. State,* 523 S.W.2d 665 (Tex.Cr.App.1975) we held that this Court could take judicial notice of the time the sun rose and set on the day of a burglary for purposes of determining if such burglary was committed in the "daytime." See also *Pierce v. State,* 401 S.W.2d 238 (Tex.Cr. App.1966). It has also been the rule that a trial court can take judicial notice of the rising and setting of the sun. *Converse v. State,* 141 Tex.Cr.R. 273, 148 S.W.2d 424 (1941).

Although this Court has not precisely said so, it has long been the rule in civil courts of this State that the trial court has wide discretion as to what facts may be judicially noticed. *Skinner v. HCC Credit Company of Arlington, Inc.,* 498 S.W.2d 708 (Tex.Civ.App.—Fort Worth, 1973, no writ). Within the limits of common sense and common knowledge, that rule is applicable in criminal trials as well.

The whole purpose of the rule of judicial notice is one of convenience to save time in the trial by eliminating the need for proof of facts about which there is really no controversy. If, however, the trial court, in its discretion, chooses not to take judicial notice of a particular fact, nothing in the rule of judicial notice forbids a litigant from establishing that fact by other competent proof. To justify a reversal in this type of situation, we think an accused must show first that the trial court abused its discretion by failing to take judicial notice of a fact; second, that the accused was prohibited by the trial court from establishing that fact by other competent evidence; and third, that because of its relevance to a material issue, the exclusion of such fact resulted in harm to the accused.[1]

In the instant case, appellant has not met this burden. The trial court refused to take judicial notice of the movements of the moon because, in the court's words, it "had no knowledge" of those facts. The appellant then offered the testimony of his own private investigator who testified about the lighting conditions in the alley. An attempt was then made to qualify the investigator as an expert in the movements of the sun and moon because he had apparently been a junior high school science teacher at one time. The trial court sustained the State's objection to the investigator's interpretation of the almanac table referring to the movements of the moon because he had not been qualified as an expert and because he had not prepared the table and because there was no showing that the table referred to the Galveston area.

Although we think that the trial court, in its discretion, could have taken judicial notice of the movements of the moon on the night in question, especially in light of *Parish v. State,* supra, we find that appellant has not shown that he was denied the opportunity to establish the movements of the moon by other competent meteorological or astronomical evidence. Moreover,

1. Appellant should have been permitted to prove this, but reversible error is not shown

because there was evidence that she had seen appellant under a street light.

considering all of the prosecutrix' testimony concerning her seeing appellant by the light from the street light as she and appellant walked into the alley and her close proximity to him during the act, we find that no harm was shown by the court's refusal to judicially notice the movements of the moon.

Appellant's third ground of error is overruled.

In his fourth ground of error appellant contends that the trial court erred in refusing to permit him to cross-examine the prosecutrix about her prior mental condition.

During cross-examination of the prosecutrix, appellant's counsel asked her whether or not she had been "quite sick" in the past. After a conference at the bench outside the hearing of the court reporter, the court sustained the State's objection to this question. Appellant's counsel then asked the court, in the presence of the jury and for the record, if he was being "instructed not to go into the psychiatric matter." The court then called another conference at the bench after which he announced to the jury that the purpose of his conference with counsel was to inform them that no psychiatric testimony would be permitted. Appellant's counsel then made the following offer of proof in an effort to perfect a bill of exception in accordance with Article 40.09, Sec. 6(d)(1), Vernon's Ann.C.C.P.:

> "MR. FORT (defense counsel): I object to the Court's ruling. I believe it is relevant to the witness's identification testimony—that type of illness. She has hysterics *according to testimony I plan to present* which goes to the weight of the identification testimony; that this type of testimony tends to embellish the occurrence that happened; that type of person who once having tentatively identified someone would tend to embellish upon that. I believe I can show, I certainly may be able to show later on, *not by this witness in her testimony* as to what she said one time and the conclusions on her part. (Emphasis added)."

The State later filed a motion in limine prohibiting impeachment of its witness by psychiatric testimony. Appellant later introduced, for purposes of perfecting his bill of exception, the reports of two psychiatric examinations of the prosecutrix conducted in 1965 and 1972. The reports reflect that the prosecutrix was an immature person suffering from "transient psychoses" in a "grossly hysterical infantile personality."

We find that appellant has not sufficiently complied with the provisions of Article 40.09, Sec. 6(d)(1), supra, with respect to the testimony which the prosecutrix herself would have given had the court permitted appellant to cross-examine her concerning her prior mental condition. Neither appellant's proffer of proof, set out above, nor the psychiatric reports included in his formal bill of exception reflect the response which the prosecutrix would have given. Appellant made no effort to cross-examine her out of the presence of the jury for purposes of perfecting his bill. Absent a showing of what the prosecutrix' excluded testimony would have been, or an offer of proof to the court as to what *her answers* would have been, nothing is presented for review. *Stein v. State*, 514 S.W.2d 927 (Tex.Cr.App.1974); *Ross v. State*, 523 S.W.2d 402 (Tex.Cr.App.1975).

An examination of appellant's proffer of proof indicates that it was his intention to bring on other witnesses who would testify as to the prosecutrix' prior mental and emotional condition. This is also reflected by appellant's formal bill of exception which includes the psychiatric reports. We have previously held that the testimony of psychiatric experts is not admissible for purposes of impeachment. *Hopkins v. State*, 480 S.W.2d 212 (Tex.Cr.App.1972). Therefore, the offer of such inadmissible evidence would not be sufficient to perfect a bill of exception concerning the excluded testimony of the prosecutrix.

Appellant's fourth ground of error is overruled.

In his fifth ground of error, appellant contends that the State suppressed evidence concerning the prosecutrix' prior mental

condition. Included in appellant's timely-filed motion for discovery, granted by the trial court, was a request for "Any evidence as to the competency of witnesses called by the State such as a history of mental illness or psychiatric care which the State may have." At the pretrial hearing on this motion the State indicated it had no such evidence. Appellant contends that the State's motion in limine filed on June 11, 1975 indicates the State had knowledge of the prosecutrix' mental condition. This motion was filed on the day following appellant's attempted cross-examination of the prosecutrix concerning her mental condition.

As we set out above in ground of error four, this evidence was inadmissible for the purpose intended by appellant. Moreover, there is nothing in the record to indicate that the State had knowledge of the prosecutrix' prior mental condition before that issue was raised by appellant during trial. It appears that appellant had acquired knowledge of the prosecutrix' mental history by independent means at some time prior to trial.

This Court has held that one cannot complain of suppression of evidence by the prosecution if the facts were already within his knowledge. *Smith v. State*, 541 S.W.2d 831 (Tex.Cr.App.1976); *Chappell v. State*, 489 S.W.2d 923 (Tex.Cr.App.1973). In *Means v. State*, 429 S.W.2d 490 (Tex.Cr. App.1968), this Court required that before one could obtain reversal on grounds of suppression of evidence he would have to make some showing at the trial that he did not know about the evidence allegedly suppressed.

In the absence of some showing that the State knowingly suppressed evidence, favorable to the defense, of which appellant was unaware, there is no error.

Appellant's fifth ground of error is overruled.

The judgment is affirmed.

Opinion approved by the Court.